UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

Brenda L. Edwards,

       Debtor.

_____/

Case No. 10-65835
Chapter 7
Hon. Walter Shapero

## OPINION REGARDING CREDITOR'S MOTION TO DISMISS

The matter before the Court is Wexford Parkhomes Condominium Association's Motion to Dismiss for Abuse of Chapter 7 Relief under 11 U.S.C. §§ 707(a) and (b)(3) (Docket No. 44).

### I. BACKGROUND

Brenda Edwards ("Debtor") filed a Chapter 7 bankruptcy petition *pro se* on August 17, 2010. On November 19, 2010, Wexford Parkhomes Condominium Association ("Creditor") filed a Motion to Dismiss Case and Bar Filing pursuant to 11 U.S.C. §§ 707(a) and (b)(3) (Docket No. 44). In that Motion, Creditor alleges that Debtor (1) misstated her gross monthly income on her originally filed Schedule I and Means Test Calculation ("Form 22A"); (2) misstated her household size on her amended Form 22A and incorrectly listed her brother, mother, and father as dependents on her amended Schedule I; (3) misstated the amount of her savings account in her originally filed Schedule B and transferred $5,200 to her mother from her checking account; (4) provided 2008 and 2009 tax returns to the Trustee and Creditor that have not been filed with the IRS; (5) undervalued her two vehicles on her originally filed Schedules; (6) gave false, misleading, and evasive responses to questions regarding the whereabouts of her 1997 Mercedes E320 at her 2004 Examination; and (7) overstated her transportation costs and cell phone costs on her Schedule J. On December 7, 2010, the Chapter 7 Trustee and the Debtor entered into a Stipulation for Bankruptcy Rule 2004 Examination of Debtor (Docket No. 45) and, on December 8, 2010, the Court entered an Order setting such for December 14, 2010 (Docket No. 46). On December 13, 2010, Creditor filed a Certification of Non-Response regarding its Motion to Dismiss (Docket No 48). Debtor failed to attend the February 23, 2011 hearing on

1

Creditor's Motion to Dismiss and the Court entered an Order Granting Motion to Dismiss and Barring Future Filings for Two Years (Docket No. 56). On March 2, 2011, Debtor filed a Motion to Reinstate Case (Docket No. 58). The Court held a hearing on Debtor's Motion to Reinstate Case on March 31, 2011. At that hearing, the Debtor testified that she was out of town arranging and attending a funeral on the date the hearing on Creditor's Motion to Dismiss was held. On April 29, 2011, the Court entered an Order Granting Debtor's Motion to Reinstate Case and Setting Hearing on Motion to Dismiss (Docket No. 70). The Court held a hearing on Creditor's Motion to Dismiss on May 19, 2011 and took the matter under advisement. On August 5, 2011, Debtor filed a Motion to Convert Case to Chapter 13. The Court scheduled a hearing on that Motion for August 25, 2011, which Debtor failed to attend, and the Court denied that Motion without prejudice.

## II. DISCUSSION

### A. **11 U.S.C. § 707(a)**

11 U.S.C. § 707(a) provides: "The court may dismiss a case under this chapter only after notice and a hearing and only for cause . . . ." The determination of whether the record establishes "cause" to dismiss a case under § 707(a) is committed to the discretion of the Court. *Indus. Ins. Servs. v. Zick (In re Zick)*, 931 F.2d 1124, 1126 (6th Cir. 1991) ("A bankruptcy court decision to dismiss pursuant to 11 U.S.C. § 707(a) will be reversed only for abuse of discretion."). In *Zick*, the Sixth Circuit held that the circumstances identified as constituting "cause" for dismissal are not exclusive and that "lack of good faith is a valid basis of decision in a 'for cause' dismissal by a bankruptcy court." *Id*. at 1127. Although the Bankruptcy Code does not explicitly state that a Chapter 7 debtor must file in good faith, this concept is implicit in the basic purpose of bankruptcy relief to relieve the honest but unfortunate debtor of his indebtedness so that he may make a fresh start. *Id*. at 1129. The court must examine the facts of the particular case and weigh the totality of the circumstances in deciding whether to dismiss a case for lack of good faith. *In re Palmer*, 419 B.R. 762 (Bankr. M.D. Tenn. 2009).

> Dismissal based on lack of good faith must be undertaken on an ad hoc basis. It should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.

*In re Zick*, 931 F.2d at 1129. The following factors should be considered when making such a determination:

> 1. The debtor reduced his creditors to a single creditor in the months prior to filing the petition.
>
> 2. The debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle.
>
> 3. The debtor filed the case in response to a judgment[,] pending litigation, or collection action; there is an intent to avoid a large single debt.
>
> 4. The debtor made no effort to repay his debts.
>
> 5. The unfairness of the use of Chapter 7.
>
> 6. The debtor has sufficient resources to pay his debts.
>
> 7. The debtor is paying debts to insiders.
>
> 8. The schedules inflate expenses to disguise financial well-being.
>
> 9. The debtor transferred assets.
>
> 10. The debtor is over-utilizing the protection of the [Bankruptcy] Code to the unconscionable detriment to creditors.
>
> 11. The debtor employed a deliberate and persistent pattern of evading a single major creditor.
>
> 12. The debtor failed to make candid and full disclosure.
>
> 13. The debts are modest in relation to assets and income.
>
> 14. There are multiple bankruptcy filings or other procedural "gymnastics."

*In re Palmer*, 419 B.R. at 768 (citing *In re Eddy*, 288 B.R. 500, 504 (Bankr. E.D. Tenn. 2002)).

In this case, factors 1, 2, 3, 4, 7, 10, 11, and 14 were either not argued by the Creditor or are not applicable.

With regard to the factor 5, whether the use of Chapter 7 is unfair, Creditor argues that Debtor should either be in a Chapter 13 or that her case should be dismissed because, if Debtor had properly filled out her Means Test Calculation (without including her brother, mother, and father as dependents) the presumption of abuse would have arisen and she would have been

3

forced to file a Chapter 13 case in the first place. Clearly, had Debtor properly filled out her Means Test Calculation, she would have been forced into a Chapter 13 case.

With regard to factor 5, whether Debtor has sufficient income to repay her debt, Debtor indicated on her Amended Schedule I that she has an average monthly net monthly income of $4,240.18 and on Schedule J that she has average monthly expenses of $2,610.96. Based on those figures, which are somewhat outdated and may have since changed, Debtor has $1,629.22 in monthly disposable income which could be used to pay her creditors.

With regard to factor 8, whether Debtor has inflated expenses to disguise financial wellbeing, it should be noted that, overall, Debtor's expenses listed on her Schedule J are quite low. Creditor argues that Debtor has overstated her transportation expense ($400) and her cell phone expenses ($100).

With regard to factor 9, whether Debtor transferred assets, Creditor claims that Debtor transferred $5,200 from her checking account to her mother. Debtor claims that she was holding that money for her mother because her mother gambles. She claims that it was never her money and that she gave it to her mother at the time she transferred it to keep it from being garnished and to keep her mother from knowing she filed for bankruptcy relief.

With regard to factor 12, whether Debtor has made full and candid disclosure, Creditor claims that Debtor has been evasive and made several knowing misstatements. Creditor specifically points to Debtor's attempts to re-calculate her Means Test Calculation in a way that does not raise the presumption of abuse, her testimony regarding the whereabouts of her 1997 Mercedes E320 at her 2004 Examination, and her overstating expenses and undervaluing her vehicles. In this case, Creditor was able to provide a transcript of the 2004 Examination because it was apparently not recorded. As such, the Court cannot give that argument much weight. However, as noted above, it is clear that Debtor made several "mistakes," whether intentionally or unintentionally, in filling out her Means Test Calculation and Schedules.

With regard to factor 13, whether Debtors debts are modest in relation to her assets and income, Debtor has secured claims totaling $339,578 and unsecured claims totaling $72,535 and she makes approximately $67,200 per year.

4

B.  **11 U.S.C. § 707 (b)(3)**

Section 707(b)(1) provides, in part,

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

In determining whether this case constitutes an "abuse" under § 707(b)(3), the Court must examine the totality of the circumstances and determine whether the Debtor is "honest" and "needy". *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Behlke*, 358 F.3d 429, 434 (6th Cir. 2004). "'[H]onest,' in the sense that [Debtor's] relationship with his [or her] creditors has been marked by essentially honorable and undeceptive dealings, and […] 'needy' in the sense that his [or her] financial predicament warrants the discharge of his [or her] debts in exchange for liquidation of his [or her] assets." *Krohn*, 886 F.2d at 126.

> It is not possible, of course, to list all the factors that may be relevant to ascertaining a debtor's honesty. Counted among them, however, would surely be the debtor's good faith and candor in filing schedules and other documents, whether he has engaged in the "eve of bankruptcy purchases," and whether he was forced into Chapter 7 by unforeseen or catastrophic events.

*Krohn*, 886 F.2d at 126. In making determinations as to neediness, courts have looked to the following non-exclusive factors:

> (a) whether the Debtor has the ability to repay his debts out of future earnings; (b) whether the Debtor enjoys a stable source of future income; (c) whether the Debtor is eligible for chapter 13 relief; (d) whether there are state remedies with the potential to ease the Debtor's financial predicament; (e) whether relief may be obtained through private negotiations with creditors; and (f) whether expenses can be reduced significantly without depriving the Debtor of adequate food, clothing, shelter and other necessities.

*In re Beckerman*, 381 B.R. at 845 (citing *In re Krohn*, 886 F. 2d at 126-27).

1.  <u>Whether Debtor is Honest</u>

In this case, it is clear that Creditor's arguments center around whether Debtor is "honest." As noted, Creditor argues Debtor (1) misstated her gross monthly income on her originally filed Schedule I and Means Test Calculation ("Form 22A"); (2) misstated her

5

household size on her amended Form 22A and incorrectly listed her brother, mother, and father as dependents on her amended Schedule I; (3) misstated the amount of her savings account in her originally filed Schedule B and transferred $5,200 to her mother from her checking account; (4) provided 2008 and 2009 tax returns to the Trustee and Creditor that have not been filed with the IRS; (5) undervalued her two vehicles on her originally filed Schedules; and (6) gave false, misleading, and evasive responses to questions regarding the whereabouts of her 1997 Mercedes E320 at her 2004 Examination.

a. Income and Dependents

Debtor is currently employed by the Detroit Public Schools as a teacher and she has held that position for some thirteen years. On her originally filed Schedule I and Means-Test Calculation ("Form 22A") filed on August 17, 2010, Debtor listed a monthly income of $3,000 and indicated that she did not have any dependents. On September 30, 2010, Debtor filed (a) an amended Form 22A, changing her income to $5,600 and her household size to four, and (b) an amended Schedule I, changing her income to $5,600 and listing her brother (age 50), mother (age 68), and father (age 68) as dependents. Debtor testified that she mistakenly used her net income on her originally filed Schedule I and Form 22A instead of her gross income and that she amended those documents to reflect her correct income figure. She further testified that her brother, mother, and father have all lived with her for a few months at different times and that she has supported them for those periods. She testified that those individuals were not listed as dependents on her unfinished 2008 and 2009 tax returns, but that those tax returns have not yet been filed with the IRS.

b. Account Balances and Transfer to Mother

In her originally filed Schedule B, Debtor indicated that her savings account with Michigan First Credit Union had a balance of $10. At some time shortly before filing, Creditor garnished $5,293.28 from Debtor's savings account. After Creditor became aware of her bankruptcy filing, it refunded the garnished amounts to Debtor's Michigan First Credit Union checking account. After that money was refunded, Debtor transferred $5,200 to her mother. Debtor testified that the $5,200 belonged to her mother. She testified that her mother likes to gamble and that her mother entrusts Debtor to holder her money so she will not spend it before bills come due. She further testified that she amended her Schedule B to show the refunded money that was garnished pre-petition.

6

c. <u>2008 and 2009 Tax Returns</u>

Debtor testified that she has not filed her 2008 and 2009 tax returns because she is unsure of certain requirements and is actively discussing those matters with the IRS. She admitted that the copies of those returns she submitted to the Trustee and the Creditor were unfiled.

d. <u>Value of Vehicles</u>

In her originally filed Schedule B, Debtor indicated that the current values of her vehicles were: $3,225 for the 2000 Mercedes Benz E430 and $3,000 for the 1997 Mercedes E320. AmeriCredit Financial Services was granted stay relief with regard to the 1997 Mercedes E320 and that vehicle was repossessed. Debtor thereafter amended her Schedule B, changing the value of the 2000 Mercedes Benz E430 to $8,000.

e. <u>Testimony at 2004 Examination</u>

Creditor argues that Debtor gave false, misleading, and evasive responses to questions posed as to the whereabouts of her 1997 Mercedes E320 at her 2004 examination. That 2004 Examination was held on November 20, 2010. The purpose of that 2004 examination was to determine the location of Debtor's 1997 Mercedes E320 and to determine the name and address of the person who, at that time, had possession of the vehicle. There was no court reporter for that exam and it was not recorded, therefore, the no record was submitted for the Court's review. However, the Adversary Complaint filed by AmeriCredit, Adv. Pro. No. 10-06956, alleged that Debtor testified at the 2004 examination that: (a) she did not have possession of the vehicle, (b) approximately one year prior to the examination, she gave the vehicle to a childhood friend named Gary, (c) she did not know Gary's last name or where he lived in the state of Ohio, and (d) she promised to return the vehicle within a week to ten days. That vehicle was ultimately repossessed.

### III. CONCLUSION

In this case, Creditor has made a credible case for dismissal under the articulated applicable tests under 11 U.S.C. §§ 707(a) and (b)(3). However, this is a somewhat close case and this Court is often inclined to give a debtor the benefit of the doubt. That said, as noted, since this case was heard and taken under advisement, (a) the Debtor field a Motion to Convert this case to Chapter 13; (b) the Court set a hearing on that motion for August 25, 2011, at which the Debtor failed to appear; and (c) the Creditor did appear and the result was that the Court denied the Debtor's Motion to Convert, without prejudice. This case was commenced on August

7

17, 2010, over a year ago. Given the foregoing facts, it is evident that Debtor would appear to have the ability to fund a Chapter 13 plan involving payment to the Creditor but may be more interested in delay than anything else. Under all the circumstances, the Court will enter an order of dismissal unless by September 6, 2011, Debtor properly presents for entry, an order for conversion of this case to Chapter 13 (an order which this Court will sign without any further hearing, if properly and timely presented).

.

```
Signed on August 30, 2011
                          /s/ Walter Shapero
                         Walter Shapero
                         United States Bankruptcy Judge
```